# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 2:07CR00001 |
| v. | ) **OPINION SETTING FORTH** |
| | ) **REASONS FOR SENTENCE** |
| FLOYD MELVIN CULLIPHER, | ) |
| | ) By: James P. Jones |
| Defendant. | ) Chief United States District Judge |

*Zachary T. Lee*, Assistant United States Attorney, Abingdon, Virginia, for United States; *Louis Dene*, Abingdon, Virginia, for Defendant.

The defendant pleaded guilty to the sexual exploitation of children, 18 U.S.C.A. § 2251(a) (West Supp. 2007), and possession of child pornography, 18 U.S.C.A. § 2252(a)(4)(B) (West 2000). A sentencing hearing has been held, and this opinion sets forth the reasons for the sentence imposed.

There were no objections to the calculation of the defendant's guideline range under the advisory sentencing guidelines. According to that calculation, the defendant had a Total Offense Level of 39 and a Criminal History Category of I, resulting in a custody range of 262 to 327 months. After notice by the court of a contemplated sentence below the guideline range, *see* Fed. R. Crim. P. 32(h); *United States v. Blatstein*, 482 F.3d 725, 732 (4th Cir. 2007), the defendant was sentenced

to 180 months imprisonment, the mandatory minimum required by 18 U.S.C.A. § 2251(e) (West Supp. 2007).

The indictment in this case charged the defendant as follows:

Count One charged that, from October 2005 to December 10, 2006, Floyd Melvin Cullipher employed, used, persuaded, induced, enticed and coerced a minor, Jane Doe #1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing that such depiction would be transported in interstate or foreign commerce, and knowing that such visual depiction was produced using materials that had been mailed, shipped or transported in interstate commerce by any means, including by computer, in violation of 18 U.S.C.A. § 2251(a).

Count Two charged that, from October 2005 to December 10, 2006, Floyd Melvin Cullipher employed, used, persuaded, induced, enticed and coerced a minor, Jane Doe #2, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing that such depiction would be transported in interstate or foreign commerce, and knowing that such visual depiction was produced using materials that had been mailed, shipped or transported in interstate commerce by any means, including by computer, in violation of 18 U.S.C.A. § 2251(a).

Count Three charged that, on or about December 10, 2006, Floyd Melvin Cullipher knowingly possessed a VHS tape, "Tape #1," which contained visual depictions that had been shipped or transported in interstate or foreign commerce, or which were produced using materials which had been mailed or shipped or transported by any means, including computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C.A. § 2252(a)(4)(B).

Count Four charged that, on or about December 10, 2006, Floyd Melvin Cullipher knowingly possessed a VHS tape, "Tape #2," which contained

> visual depictions that had been shipped or transported in interstate or foreign commerce, or which were produced using materials which had been mailed or shipped or transported by any means, including computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C.A. § 2252(a)(4)(B).
>
> Count Five charged that, on or about December 10, 2006, Floyd Melvin Cullipher knowingly possessed a CD tape, "CD #1," which contained visual depictions that had been shipped or transported in interstate or foreign commerce, or which were produced using materials which had been mailed or shipped or transported by any means, including computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C.A. § 2252(a)(4)(B).

(Presentence Investigation Report ("PSR") ¶¶ 2-6.)

In the written plea agreement, the government agreed to dismiss Count Five in return for the defendant's guilty plea to the other counts. In the PSR submitted to the court prior to sentencing, the probation officer recited the circumstances surrounding the offenses as follows:

> From approximately the latter months of 2005 until December 2006, [defendant] Floyd Melvin Cullipher was an intermittent guest at the home of [Mr. and Mrs. John Doe]. Mr. Cullipher and his wife had purchased some property near the [Doe's] residence, and they were in the process of building a cabin as a seasonal retreat. The Cullipher's primary residence was in [_____], Florida. While Mr. Cullipher was in Virginia, he stayed in a recreational vehicle (RV) parked adjacent to the [Doe] residence, where he would hook up water and electricity. During those times, he also had complete access to the [Doe] home for laundry, meals, etc. As compensation, Cullipher was assisting Mr. [Doe] with some home renovations. Mr. [Doe] is married to [Mrs. Doe], and her

two daughters by a previous marriage, were residing in the home with Mr. and Mrs. [Doe]. The defendant is the uncle of [Mrs. Doe] by marriage.

On December 10, 2006, [Mr. Doe] was doing some remodeling work in the basement of his residence . . . . While removing some old insulation, Mr. [Doe] discovered two power supply cords plugged into an extension cord that he traced back to a utility area in his basement. Connected to the power supply cords were two wireless video cameras. Mr. [Doe] found a wireless mini video camera in his master bathroom vent and another wireless video camera in the bathroom used by his two stepdaughters, who will be identified as Jane Doe #1 and Jane Doe #2, both of whom were at least twelve years of age, but not yet sixteen years of age as of that date.

Mr. [Doe] immediately removed the two cameras, as well as the wiring and power supplies. [Doe] realized the cameras were only practical if the feed was being recorded. He entered Cullipher's unlocked RV and found a video cassette recorder (VCR) in the living area, that was actively recording, and three additional tapes laying nearby. He boxed up these items with the wireless video cameras.

Subsequent to that, Mr. [Doe] called his uncle, [Richard Roe], and asked him to come to the [Doe] residence. He showed [Roe] what he had found, and [Roe] asked if he found a receiver. [Doe] told him that he had not, so they again entered the RV and above where the VCR had been located, the two found a 4-channel receiver. [Doe] also placed it in the box and asked [Roe] to take the items with him for safe keeping.

Sometime after [Roe] left, [Doe] recalled that there was another VCR in the RV. [Doe] went back into the RV and discovered that the VCR in the bedroom was also recording. [Doe] removed the tape from the VCR, as well as some other tapes and another 4-channel receiver, he discovered in the RV.

- 4 -

Case 2:07-cr-00001-JPJ-RSB   Document 41   Filed 06/25/07   Page 4 of 12   Pageid#: 80

Mr. [Doe] took all of these items and traveled to the home of [Roe]. There, [Doe], [Roe], and [Roe's] wife viewed a portion of one of the tapes that clearly showed his oldest stepdaughter brushing her hair.

When Mr. [Doe] returned home at approximately 8:30 p.m., he met Cullipher in the driveway. [Doe] said that Cullipher immediately asked "what are you going to do?" [Doe] said that he told Cullipher that he would not do anything immediately as long as Cullipher was gone by daylight. [Doe] also told Cullipher that he would have to tell Cullipher's niece, but he would not do so until after Cullipher had departed. [Doe] told Cullipher that he had found the capability for the use of eight cameras, but that he had found only two. Cullipher said that there were only two cameras, and the defendant admitted that he had placed the cameras in the bathrooms and had video-taped activity in the bathrooms. The video tape of the girls showed them in various states of undress, including being totally nude, and clearly showed the pubic area, including pubic hair of each of the girls.

Also on one of the tapes was video of Jane Doe #3 from [_____], Florida, who was at least twelve years of age, but not yet sixteen years of age. She resided in Florida with her mother and stepfather, [Mr. and Mrs. Blank]. The father of Mrs. [Blank's] two oldest children passed away about seven years ago. Jane Doe #3 is the oldest daughter from her first marriage. The [Blanks] stated that they had been good friends with the Culliphers, as Mr. [Blank] and Mr. Cullipher both were Masons and close friends. Mrs. [Blank] said that she received a call from [Mrs. Doe] in January 2007, and [Mrs. Doe] told [Mrs. Blank] about the videos found in Cullipher's RV in Virginia, and that her oldest daughter may have been video taped while she was changing clothes in a bathroom at the defendant's home in Florida, through the use of a wireless video camera.

During the investigation, it was determined that Jane Doe #3 was in the video. This footage also clearly showed the girl in various states of undress, including being totally nude, and clearly showed the pubic area, including pubic hair of Jane Doe #3. She had spent one night at the Cullipher's home, and had been in the defendant's custody or control as

he had temporary supervision over or responsibility for Jane Doe #3 when she was at his home swimming in Cullipher's pool. Some of the video footage showed Jane Doe #3 changing her swimsuit at the Cullipher home.

(PSR ¶¶ 10-18.)

During a later consensual search of the defendant's home in Florida, two computers were seized and other sexual images of minors were found, along with evidence that the defendant had accessed the Internet seeking child pornography. Counts One and Two were based on the taping of Jane Does #1 and #2 and Counts Three and Four were based on the possession of the two tapes of Jane Doe #3.

The defendant is 56 years old. He served in the Navy for seven years, was honorably discharged, and thereafter worked for 26 years as a civilian employee of the Defense Department, retiring in 2006 as an Information Systems Security Manager. He has been married since 1972 and has three grown children. He has no prior criminal involvement.

The PSR recited that Cullipher's daughter told the FBI that he had molested her as a young child, unknown to the rest of the family. Cullipher's counsel advised the court during sentencing that Cullipher denied this conduct, although no formal objection to the PSR was filed.

The calculation of the defendant's sentencing range under the advisory sentencing guidelines was made by the probation officer in the PSR. The guideline for a violation of 18 U.S.C.A. § 2251(a), the charge on which Counts One and Two were based, is found at U.S. Sentencing Guideline Manual ("USSG") § 2G2.1 (2006). That provision calls for a Base Offense Level of 32. Because the defendant pled guilty on the morning of trial, he stipulated in his plea agreement that he was not entitled to any reduction in the offense level for acceptance of responsibility. In addition, his offense level was increased because of specific offense characteristics— two levels because the defendant was a relative of Jane Doe #1 and #2 , and two levels because a minor under the age of 16 was involved. *See* USSG § 2G2.1(b)(1), (5). The Adjusted Offense Levels for both Counts One and Two were thus 36.

The guideline range for Counts Three and Four, because they involved the production of the tapes by the defendant, were also calculated under USSG § 2G2.1. *See* USSG § 2G2.2(c)(1) (2006) (providing that if the offense of possession of child pornography involves causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, the guideline under 2G2.1

is to be used). The guideline calculation for Counts Three and Four also produced an Adjusted Offense Level of 36.[1]

In addition, the guidelines provide that offenses involving different minors are not to be grouped together. USSG § 2G2.1 cmt. n.5. There were thus three groups and a Combined Adjusted Offense Level of 39.

While the Sentencing Guidelines are not mandatory, *United States v. Booker*, 543 U.S. 220, 226-27 (2005), I am obligated to "consult those Guidelines and take them into account," along with the sentencing goals set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2007). *Booker*, 543 U.S. at 264. The Fourth Circuit has mandated the following process that a district court in this circuit must follow in order to comply with *Booker*:

> First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range. Next, the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors. In doing so, the district court should first look to whether a departure is appropriate based on the Guidelines Manual or relevant case law . . . . If an appropriate basis for departure exists, the district court may depart. If the resulting departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence (a "variance sentence"). The district court must articulate the reasons for the sentence imposed, particularly explaining

---

[1] While Cullipher was not a relative of Jane Doe #3, she had spent time at his home and thus was in his "supervisory control," at least temporarily. *See* USSG § 2G2.1 cmt. n.3(A). Accordingly, there was a two-level enhancement.

- 8 -

any departure or variance from the guideline range.  The explanation of a variance sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary.  The district court need not discuss each factor set forth in § 3553(a) in checklist fashion; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.

*United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (alterations, internal quotation marks, and citations omitted).[2]

Under § 3553(a), I must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as

the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C.A. § 3553(a).  The further a sentence "diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Moreland*, 437 F.3d at 434.  Nevertheless, "'a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section

---

[2] Sentencing was held before the Supreme Court's decision in *Rita v. United States*, No. 06-5754, 2007 WL 1772146 (U.S. June 21, 2007), but nothing in that opinion appears to change the approach the court must take in formulating this sentence.

- 9 -

3553(a)(2).'" *United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

The applicable guideline in this case, 2G2.1, covers a wide range of conduct. While the surreptitious taping by the defendant is covered by the plain language of 18 U.S.C.A. § 2251(a) (punishing any person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct"), the sentencing guideline also covers conduct likely to cause even greater harm to the victim and society. Moreover, to fall within the statute, "sexually explicit conduct" as applicable to this case, must encompass the "lascivious exhibition of the genitals or pubic area." 18 U.S.C.A. § 2256(2)(A)(v) (West Supp. 2007). The tapes in question do, on occasion, show the pubic areas of the young girls and the defendant clearly had a lascivious intent in making the recordings. *See United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987) (holding that "lascivious" as used in statute is not a characteristic of the child being photographed but of the exhibition). Nevertheless, the tapes here are far from any extreme in the continuum of child pornography.

In addition, it has not been shown that the defendant distributed the recordings to others or had any intent to do so, a fact distinguishing his conduct from that of many

producers of child pornography. His intent was to satisfy his own obsessions, without any commercial or financial motivation.

These facts clearly bear upon the court's necessary examination of the "nature and circumstances of the offense" as required by 18 U.S.C.A. § 3553(a).

The defendant's own history and characteristics must also be examined under the statute, and the defendant's age and lack of prior criminal history are thus relevant. The court has imposed on the defendant a lifetime of supervised release after imprisonment, under detailed and strict conditions intended to limit the defendant's ability to reoffend and to maximize the protection to the public. Among other things, the defendant must not associate with children except under supervision; must not possess video, photographic, or other recording devices without permission; must not assess a computer except under limited circumstances; and must participate in sex offender assessment and treatment programs.

For these reasons, I find that a sentence of 180 months, the mandatory minimum required by statute, must be imposed.[3]

---

[3] Had the defendant pled guilty in advance of trial, and thus been entitled to credit for acceptance of responsibility, his Combined Adjusted Offense Level would have been 36, which produces an imprisonment range under the advisory guidelines of 188 to 235 months. The defendant did not contest that he made the tapes as alleged. As indicated in his allocution at sentencing, however, he simply could not accept (at least until the morning of trial) that his conduct was punishable by the sentence required to be imposed.

- 11 -

DATED: June 25, 2007

 /s/ J<small>AMES</small> P. J<small>ONES</small>
Chief United States District Judge